See also, D.C., 328 F.Supp. 1288.

**James William STIDHAM, Petitioner,**

**v.**

**Harold R. SWENSON, Respondent.**

**Civ. A. No. 18121–2.**

United States District Court,
W. D. Missouri, W. D.

May 15, 1970.

Petitioner appeared pro se.

John Danforth, Atty. Gen., and Kenneth M. Romines, Asst. Atty. Gen., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS

COLLINSON, District Judge.

Petitioner is an inmate of the Missouri State Penitentiary serving a sentence of life imprisonment upon conviction of a first-degree murder. Petitioner filed a petition for habeas corpus asserting that his conviction is void because it was rendered without due process of law and in violation of the Fifth, Sixth, and Fourteenth Amendments.

In May, 1952 petitioner was sentenced to a 25-year term in the Penitentiary for robbery. While serving his term, he was accused and convicted in 1955 of killing another inmate, for which he was sentenced to a life term. Petitioner appealed his conviction which was affirmed by the Supreme Court of Missouri in 1957. See 305 S.W.2d 7. In 1964 he filed a 27.26, V.A.M.R. motion to vacate his sentence which was denied, without an evidentiary hearing. On appeal, the Missouri Supreme Court affirmed. See 403 S.W.2d 616. Thereafter, petitioner filed a second 27.26 motion alleging new grounds, which was also denied without an evidentiary hearing by the trial court. The Supreme Court of Missouri reversed and remanded on appeal (415 S.W.2d 297) and on December 5, 1968, an evidentiary hearing was held in the St. Louis City Circuit Court. This hearing resulted in a denial of relief under the 27.26 motion, which judgment was appealed to the Supreme Court and consolidated with another appeal for hearing by the court en banc. The Supreme Court on February 9, 1970 affirmed the decisions of the lower courts. 449 S.W.2d 634.

Petitioner then filed a petition for habeas corpus in this Court, and on March 2, 1970, a show cause order was issued, since it appeared that petitioner had exhausted his available state remedies and might have stated a violation of one or more of his federally protected rights. The respondent filed with this Court, in response to the show cause order, the transcripts of the records on appeals (Missouri Case Nos. 45537 and 54674), briefs and arguments of the parties, and the opinions of the Supreme Court of Missouri. It appears to the Court that this record is complete and that it fully demonstrates that the pe-

titioner has exhausted his available state remedies.

The petitioner alleges seven grounds for relief: (1) that he was tried and convicted upon a charge of conspiracy which was not included in the indictment; (2) that he was deprived of assistance of counsel at two critical stages of his trial; (3) that he did not knowingly or competently waive the assistance of counsel at any stage of the proceedings against him; (4) that certain members of the Missouri State Highway Patrol and personnel of Missouri State Penitentiary exerted physical and mental punishment upon him to secure a confession from him; (5) that the trial judge admitted the confession into evidence without first making a clear and specific finding that the said confession was voluntary; (6) that Instruction No. 6 given at the trial did not fully set out the constitutional standards for the jury's guidance to determine the voluntariness of the said confession; and (7) that the State of Missouri knowingly used perjured testimony of two convicts to obtain the conviction of petitioner.

The facts are fairly well set out in State v. Stidham, Mo., 305 S.W.2d 7. Very briefly, in 1952 petitioner was sentenced to 25 years' imprisonment for his part in the armed robbery of Grapette Bottling Company in Joplin, Missouri. (See State v. Stidham, Mo., 258 S.W.2d 620.) On October 3, 1955, after a jury verdict of guilty, petitioner was sentenced to life imprisonment for his participation in the murder of a fellow inmate, Walter Donnell, on September 22, 1954, during the riot of 800 prisoners in the Missouri State Penitentiary.

Petitioner's first contention is that the state was allowed to prove and the jury instructed upon the charge of conspiracy to murder which was not included in the indictment. The indictment did not charge conspiracy; but it did charge seven persons with the murder of Donnell. Even though petitioner and the other named defendants were granted severances, the indictments in each trial named all seven of them. Further, the evidence showed that the defendants had acted in concert. An objection was leveled against Instruction No. 4 because it hypothesized that each had entered into a conspiracy and had acted in concert and "aided, abetted, assisted or encouraged" in the slaying. Under Missouri law all persons who are guilty of acting in concert in the commission of a felony are considered principals and are charged, tried, convicted and punished in the same manner. (See V.A.M.S., § 556.170.) There is no merit to the claim that murder and conspiracy to commit murder (which was in fact accomplished) are such different charges that petitioner could not have been prepared to defend himself. Furthermore, there is direct authority for instructing and proving a conspiracy to commit murder under an indictment charging first-degree murder. State v. Holloway, 355 Mo. 217, 195 S.W.2d 662 (cited by the Missouri Supreme Court) states:

(P)roof that appellant and others conspired together to commit an unlawful act and that the killing occurred in furtherance of the conspiracy may be shown under an indictment or information charging first degree murder only.

Petitioner next contends that he was deprived of effective assistance of counsel at two critical stages of his trial and that he did not knowingly or competently waive such assistance at any time. These times were while he was being interrogated by the police and at his first arraignment.

Factually, there were two arraignments. The first was instituted by the prosecuting attorney on an information in the magistrate court. There petitioner demanded counsel, and shouted out in the courtroom for counsel, but his request was denied. A plea of not guilty was entered for petitioner. Preliminary hearings were held as required by V.A. M.S., § 544.250. Petitioner was later rearraigned on an indictment returned by the grand jury of Cole County, and at that time counsel was appointed for

him. Petitioner contends that this late appointment of counsel resulted in the denial of effective assistance of counsel under the standard of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

The failure to appoint counsel at interrogation has been established as a denial of due process by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, these cases are not retroactive (Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882) and do not control here.

The more serious question concerns the failure to appoint counsel at the time of the first arraignment, which petitioner claims resulted in denial of due process. Petitioner cites Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114; White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; and Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, as authority. The Missouri Supreme Court in their opinion 449 S.W.2d 634 distinguished the latter two cases by stating that "(t)here is no factual similarity in this and any of the cited cases * * * (citing White v. Maryland, *supra*, and Arsenault v. Massachusetts, *supra*) in which there were pleas of guilty at the preliminary or 'at a probable cause hearing' and the pleas were introduced in evidence upon jury trials." However, in Hamilton v. Alabama, from which the holdings in *White* and *Arsenault* were drawn, the petitioner, at arraignment without counsel being appointed, pled not guilty. The Supreme Court held that the arraignment is a critical stage in a criminal proceeding, and the failure to appoint counsel to represent the defendant at that time is a denial of due process. The court stated 368 U.S. at page 55, 82 S.Ct. at page 159:

> When one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted. (Citing cases.) In this case * * * the degree of prejudice can never be known. Only the presence of

counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.

The respondent and the Missouri Supreme Court opinion state that no infringement of rights occurred for two reasons. The first is that "There is neither claim nor proof that anything done or said at any preliminary hearing or in any medical or mental examination was employed against [Stidham] or that the state even secured any relevant information." (449 S.W.2d at 639.) More decisive, according to the court, is the fact that Stidham was not prosecuted by information (under which the preliminary hearings had been held) but rather by an indictment returned on November 23, 1954. "Thus there was no occasion or place for a preliminary hearing." Petitioner, along with his six co-defendants, were arraigned under the information on September 29, 1954; the information was dismissed and the indictment was returned on November 23, 1954. On this date counsel was appointed, and petitioner was rearraigned with the presence of counsel on December 6, 1954.

The important question is whether the arraignment and preliminary hearing are critical stages in the proceedings in Missouri. Under Missouri law, a defendant is not required to assert any right, plea or defense at the arraignment in order to preserve any statutory or constitutional rights. (V.A.M.S., § 546.020) Moreover, all rights, pleas or defenses are preserved inviolate. In State v. Benison (Mo.Sup.) 415 S.W.2d 773, it was held that the absence of counsel during arraignment is not, per se, a violation of the Sixth Amendment. In Madison v. Tahash (C.A.8) 359 F.2d 60, the court held that the arraignment was not a critical stage of the criminal proceedings in Minnesota. Donnell v. Swenson (W.D.Mo.) 302 F.Supp. 1024, extended the *Tahash* holding to cover arraignments in Missouri.

In State v. Patrick (Mo.Sup.) 420 S.W. 2d 258, the preliminary hearing was held not to be a critical stage. This view is also supported by Pope v. Swenson (C.

A.8) 395 F.2d 321, 322, in which the court stated, "We agree that denial of counsel at the preliminary hearing under Missouri law was not a constitutional infirmity in Pope's conviction, where the defendant pleaded not guilty and was otherwise not shown to have been prejudiced." See also Nolan v. Nash (C.A. 8) 316 F.2d 776, 777; Cf. Burnside v. State of Nebraska (C.A.8) 346 F.2d 88; Holland v. State of Nebraska (C.A.8) 416 F.2d 1007.

■ Petitioner in this case did not plead, and, pursuant to V.A.M.S., § 546.-020, a plea of not guilty was entered for him. At the second arraignment, petitioner pled not guilty, was furnished a copy of the indictment and, upon his request for a certain lawyer, the court appointed that attorney who represented him thereafter. Petitioner raises no complaints about the efforts of the attorney in his behalf. Petitioner has not shown that he was deprived of any rights by the failure to appoint counsel at the first arraignment, and, therefore, in line with the Eighth Circuit Court of Appeals, we hold that the failure to appoint counsel at that time was not a deprivation of rights.

Petitioner further asserts that the state knowingly used perjured testimony of two witnesses against him. The state used two prison inmates, Herman Trout and James Creighton, to testify; as proof of perjury, petitioner states that both prisoners had their sentences commuted and were released from prison on the same day.

■■ In making such an allegation, the burden of proof is on petitioner to show both that the testimony was perjured and that such testimony was knowingly and intentionally used by the prosecuting attorney in order to obtain a conviction. Anderson v. United States (C. A.7) 403 F.2d 451; Smith v. State of Florida (C.A.5) 410 F.2d 1349, and cases cited therein; Enzor v. United States (C.A.5) 296 F.2d 62; United States v.

Jenkins (C.A.3) 281 F.2d 193. The petitioner has not met this test. His allegations and the record are devoid of any proof of perjury or willful use of perjury by the state. Furthermore, petitioner concedes that he has no direct proof, but contends that the circumstantial evidence, that of commutation of sentence less than six months after Stidham's trial, is sufficient proof to indicate perjury in line with Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. That case is not controlling here because there was express proof of a "deal" between the prosecutor and witness in the case. Here there is no such proof.

Petitioner's three remaining contentions relate to the issue of voluntariness of his confession. He asserts that he was coerced by physical and mental punishment to confess, that the confession was admitted without a finding by the trial judge that it was voluntary, and that the instruction given at the trial did not fully set out the constitutional standards for the jury's guidance in determining the issue of voluntariness.

In regard to petitioner's first allegation, he relies mainly upon the cases of Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423, and Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895. Both cases use the criterion of "totality of circumstances" in determining whether the confessions were voluntary. The respondent and the Missouri Supreme Court opinion lend little credence to Stidham's testimony because "Without narrating even briefly, the testimony in contradiction of Stidham's uncorroborated claims was all but overwhelming * * *" This not unexpected. The Supreme Court in both *Clewis* and *Davis, supra,* commented, "As is almost invariably so in cases involving confessions obtained through unobserved police interrogation, there is a conflict in the testimony as to the events surrounding the interrogation."

It is necessary to review the uncontroverted facts in order to determine this

issue. The murder was committed on September 22, 1954 and Stidham confessed on September 27, 1954. He was questioned intermittently up until that time concerning his part in the murder. He had very little food and very little sleep. At no time during this period was he informed of his right to counsel or to remain silent. In fact, he asserts that an attempt to get an attorney was thwarted when the prison authorities refused to allow a letter to be mailed. On the 27th, Stidham was taken to the Athletic Building and questioned by a number of officers who had hand guns and riot guns in their possession. Stidham asserts that he was physically abused and rendered unconscious at this time, and these acts resulted in his confession. Before and after the interrogations Stidham was in solitary confinement and no visitors, including parents or priest were allowed to see him. Other uncontradicted facts indicated that Stidham was deprived of food for two days after his confession and that he lost 25 pounds during the period of interrogation.

He had consistently denied all involvement in the murder up until the time of his confession.

■ The most damaging of the factors considered in the totality of the circumstances is the failure to inform petitioner of his rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, has been determined not to be applicable retroactively. (See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.) However, it still remains that the failure to inform is a significant factor in determining the issue of voluntariness, although it is insufficient in itself to require the voiding of the confession. Wholly apart from the disputed facts, the statement of facts established by the record and as found at Stidham's 27.26 evidentiary hearing do not lead to the conclusion that such pressures were applied to Stidham as to result in overcoming his will to maintain his innocence.

Petitioner next attacks the procedure used by the trial court in determining the voluntariness of the confession, alleging that it is in violation of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. In that case, a constitutional rule was established that a jury was not to hear a confession unless and until the trial judge had determined that it was freely and voluntarily given. In Sims v. Georgia, 385 U.S. 538, at page 544, 87 S.Ct. 639, at page 643, 17 L.Ed.2d 593, the court further extended this holding:

> The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of a defendant but it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity.

Here, in accordance with a request of Stidham's counsel, the trial court conducted a preliminary examination inquiring into the voluntariness of the confession outside of the hearing of the jury. Witnesses were called and cross-examined. This hearing satisfied the requirement of Jackson v. Denno, *supra*, that there be a (1) reliable nonjury preliminary or post conviction determination of the issue of voluntariness, (2) uninfluenced by the truth or falsity of the confession (3) by procedures "fully adequate to insure a reliable and clear-cut determination, including the resolution of disputed facts upon which the voluntariness issue may depend."

At the conclusion of the testimony, the court made the following statement:

> THE COURT: Now, at the conclusion of the hearing held outside of the hearing of the Jury, the request by the Defendant for a hearing upon the statement which has been identified as—

MR. RILEY: 16 and 16–1.

THE COURT: 16 and 16–1, it is the Court's opinion that the matters concerning the statement should be offered in the presence of the Jury, subject of course to any attacks as to its credibility by the Defendant. The Defendant has of course the right to proceed to challenge the voluntariness of the statement and confession, even before the Jury, but it is the Court's opinion that upon the evidence that has been offered before the Court and outside of the hearing of the Jury, that the statement is and should be admissible in evidence, subject to further examinations of the witnesses which might be conducted, so we may proceed with Sergeant Little, as to his identification before the Jury of the statement in question, Exhibit 16 and 16–1.

MR. HENNELLY: In other words, the Court is overruling my Motion, and request of the Court to hold as a matter of law, that those statements were involuntary, is that right?

THE COURT: That is right. Mr. Sheriff will you bring the Jury back in?

If the trial court had simply stated that he found the confession was voluntarily made after hearing the many witnesses who testified on this score, the matter would have been settled and this point could not be raised in this Court. There are many cases holding that a ruling by the Court that the evidence heard "makes a jury issue of the matter," or words of similar import, do not satisfy the rule of Jackson v. Denno, *supra*. And so the precise question presented here is whether the Court did find the confession involuntary or whether he failed to rule on that point and decided to let that question be decided by the jury.

■ The evidence in this case on behalf of the defendant, which the judge heard, was that he was subjected to brutal physical torture to induce the confession. If the judge had believed even a part of his testimony, he would have undoubtedly held the confession involuntary. The trial court held a full-scale evidentiary hearing on the voluntariness of the confession, and without actually using the word voluntary, directly held that he believed the state's witnesses and did not believe the defendant's testimony. This reasoning was supported by the direct ruling that he was denying the request of defendant's counsel to hold that the contested statement was involuntary.

It would be highly technical, in this day and age, to hold that the word "voluntary" was a word of art and, in its absence, a conviction by a jury, after a long trial, should be set aside because the judge ruled the statement was not involuntary instead of ruling that the statement was voluntary. It is the opinion of this Court that the statements and action of the judge does clearly indicate a finding of voluntariness, and is sufficient under the teachings of Jackson v. Denno, *supra*, and Sims v. Georgia, *supra*.

The petitioner's third attack is related to the second. Basically, he contends that since the judge made no specific finding of voluntariness, his instruction which did not require them to make a specific finding on the voluntariness of the confession was violative of Jackson v. Denno, *supra*. Since we have held that the trial court reliably determined the issue of voluntariness, it was not necessary for the jury to make a specific finding thereon.

Therefore, it is

Ordered that the petition for habeas corpus be, and hereby is, denied.